**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CHERRY COTTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 4:06-CV-438 CAS |
| v. | ) | |
| | ) | |
| AT&T OPERATIONS, INC., | ) | |
| formerly known as SBC Operations, Inc. | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on defendant's Motion for Summary Judgment on Counts I and II and defendant's separate Motion for Summary Judgment on Counts III and V. Plaintiff Cherry Cotton opposes the motions. For the following reasons, the Court will grant defendant's motions for summary judgment.

## I. Background

Plaintiff Cherry Cotton, an African-American female, filed this action against her former employer, AT&T Operations, Inc. ("AT&T"), asserting claims of racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (Count I); racial discrimination and retaliation in violation of 42 U.S.C. § 1981 (Count II); and retaliation and interference with protections under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2612 (Count III). Plaintiff also asserts a claim for breach of contract (Count V).[1]

---

[1]In an Order dated September 28, 2006, the Court dismissed plaintiff's claims for refusal to pay final wages of vacation pay in violation of Missouri Revised Statute § 290.110 (Count IV); outrageous conduct (Count VI); and negligent infliction of emotional distress (Count VII).

Defendant moves for summary judgment on the grounds that plaintiff cannot establish a prima facie case of race discrimination under either Title VII or § 1981, and that plaintiff's Title VII claims are procedurally barred because plaintiff failed to timely file this action within ninety days of receiving an EEOC right-to-sue notice. Defendant also moves for summary judgment on plaintiff's FMLA and contract claims, asserting that plaintiff cannot establish the elements of a prima facie case of FMLA discrimination or retaliation, and plaintiff did not exhaust the contract grievance procedure required to sustain a breach of contract claim.

## II. Legal Standard

The standards applicable to summary judgment motions are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor). Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on a material factual issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

Once the burden shifts, the non-moving party may not rest on the allegations in his pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); Herring v. Canada Life Assur. Co., 207 F.3d 1026, 1029

(8th Cir. 2000); Allen v. Entergy Corp., 181 F.3d 902, 904 (8th Cir. 1999). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Herring, 207 F.3d at 1029 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A party resisting summary judgment has the burden to designate the specific facts that create a triable question of fact. See Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1114 (8th Cir. 2004). "Self-serving, conclusory statements without support are not sufficient to defeat summary judgment." Armour and Co., Inc. v. Inver Grove Heights, 2 F.3d 276, 279 (8th Cir. 1993).

With this standard in mind, the Court accepts the following facts as true for purposes of resolving this motion for summary judgment.

## III. Facts[2]

_____

[2]The Court initially notes that in compliance with Local Rule 4.01, defendant submitted a Statement of Uncontroverted Material Facts in support of both its motions for summary judgment. [Doc. 110] ("Def. SOF Counts I and II") and [Doc. 79] ("Def. SOF Counts III and V"). Defendant's Statements of Uncontroverted Material Facts set forth each fact in a separately numbered paragraph with appropriate citations to the record. In an Order issued April 27, 2007, the Court specifically advised plaintiff's counsel as to the requirements of Local Rule 4.01, stating that plaintiff's response to summary judgment should contain:

 [A] statement of material facts as to which plaintiff contends a genuine issue exists. In the statement of material facts, (1) the matters plaintiff claims are in dispute shall be set forth with specific references to portions of the record, where available, upon which plaintiff relies; and (2) plaintiff shall note for each disputed fact the paragraph number from defendant's listing of facts. All matters that are set forth in Defendant's Statement of Material Facts will be deemed admitted for purposes of summary judgment unless specifically controverted by plaintiff as required by E.D. Mo. Local Rule 4.01(E).

Docket Text Order, Apr. 27, 2007.

In response to defendant's SOF in support of its motion for summary judgment on Counts I and II, plaintiff responded "deny" to every paragraph to which she responded. (AT&T filed an amended statement of facts on May 10, 2007. The amended statement of facts is identical to the original, but AT&T added citations to the record. [Doc. 110]). The majority of these purported denials—paragraphs 3, 6-29, 32-45, 48, 50-55, 58-66, 71, 74, and 77—do not contradict the specific facts as set forth by defendant, but merely add extraneous facts loosely related to the facts set forth by defendant. Plaintiff denies paragraph 79, but supports this denial with statements in her affidavit that contain irrelevant information, inadmissible hearsay, and declarations made without personal knowledge and unverified and unauthenticated exhibits attached to her affidavit. In paragraphs 4 and 5, plaintiff states that she is "not aware" of the alleged facts. In paragraph 30, plaintiff does not contradict the facts stated by defendant, and she cites to an irrelevant portion of her affidavit. In paragraph 31, plaintiff cites to the record, but the record does not support plaintiff's proposition. In response to paragraph 46, plaintiff states a conclusion of law; in response to paragraphs 47 and 49, plaintiff denies the statements with citation only to her memorandum of law, which is not evidence. Plaintiff does not respond to the following statements of fact: 1-2, 56-57, 67-70, 72-73, 75-76, 78, and 80. See Pl.'s Resp. to Def.'s SOF Counts I and II.

In response to defendant's SOF in support of summary judgment on Counts III and V, plaintiff denies all but one of defendant's facts. Although plaintiff purports to deny the statements of fact in paragraphs 3-6, 8-15, 22-27, 29-40, 42, and 46, she supports these denials with statements that do not specifically contradict defendant's statement of facts. For paragraphs 7-15, in addition to not specifically contradicting the facts set forth by defendant, plaintiff supports her purported denials with statements in her affidavit that contain inadmissible hearsay or declarations made without personal knowledge. In response to paragraphs 19-21, 28, and 41, plaintiff's denials do not appear to contradict the statement of fact and the denials either contain no citation to evidence in the record, contain a citation to evidence that is inadmissible (i.e., hearsay or a declaration made without personal knowledge), or contain citation to evidence that does not support the stated proposition. Plaintiff denies paragraphs 16-18 without citation to any evidence. Plaintiff denies paragraph 64, citing to irrelevant portions of her affidavit. Plaintiff's denials of paragraphs 49-58 are supported with citation to plaintiff's legal memoranda, which is not evidence. Finally, plaintiff does not respond to paragraphs 47-48, 59-63, 65-69, and admits paragraph 43. See Pl.'s Resp. to Def.'s SOF Counts III and V.

Federal Rule of Civil Procedure 56(e) requires an opposing party to set forth specific facts through affidavits or other admissible evidence showing that there is a genuine issue for trial. Local Rule 4.01(E) requires an opposing party to set forth disputed facts with specific references to the record. All facts not specifically controverted by the opposing party are deemed admitted under Local Rule 4.01(E). See Deichmann v. Boeing Co., 36 F. Supp. 2d 1166, 1168 (E.D. Mo. 1999); see also Reasonover v. St. Louis County, Mo., 447 F.3d 569, 579 (8th Cir. 2006). The "concision and specificity required" by local rules such as Local Rule 4.01(E) "seek to aid the district court in

Plaintiff Cherry Cotton, an African-American female, was formerly employed by AT&T as a senior consultant, a non-management position, at its Olivette call center. Plaintiff began her employment with AT&T in September 2003. She was responsible for sales and service calls with customers and prospective customers. (Def. SOF Counts I and II, ¶¶ 1-3)

## A. AT&T's Promotion Process

In August 2004, AT&T implemented the management candidacy process. Among many other requirements, the management candidacy process requires an employee seeking a promotion to management to complete a developmental activity and return it to the company along with a copy of the employee's resume. Upon receipt of the developmental activity, the manager schedules a time with his senior manager to review and discuss the employee. The manager then meets with the employee, reviews the employee's developmental activity, and provides feedback. Id. at ¶ 15.

On August 27, 2004, during a meeting to discuss the management candidacy process, plaintiff's supervisor, James Tweedie, gave plaintiff a developmental activity (for the second time), and asked her to complete and return it with her resume. On October 28, 2004, plaintiff submitted

---

passing upon a motion for summary judgment, reflecting the aphorism that it is the parties who know the case better than the judge." Libel v. Adventure Lands of Am., Inc., 482 F.3d 1028, 1032 (8th Cir. 2007) (citing Northwest Bank & Tr. Co. v. First Ill. Nat'l Bank, 354 F.3d 721, 725 (8th Cir. 2003) (district court did not abuse its discretion in deeming defendant's statement of uncontroverted material facts admitted where plaintiff responded with "denied" without supporting citation).

All the statements of material facts contained in defendant's SOF for Counts I and II and the statements of material facts contained in paragraphs 3-43 and 46-69 of defendant's SOF for Counts III and V are deemed admitted for the reasons stated above. The only material facts that plaintiff has specifically controverted with appropriate citation to the record are contained in paragraphs 44 and 45 of defendant's SOF for Counts III and V. Whether plaintiff's supervisor, Ms. Suzanne Lay, had knowledge of the plaintiff's FMLA status is a disputed fact.

her developmental activity. Mr. Tweedie advised plaintiff that he could meet with her to discuss the developmental activity and provide feedback on November 4, 2004. Plaintiff, however, e-mailed Mr. Tweedie back stating: "James, I don't think you should give me any information on how to improve my activity. It's my work, I just wanted to turn it in. Sorry about that. Thank you." Id. at ¶¶ 17, 27-28.

In August 2004, AT&T promoted Michael Patton, a Caucasian male, to a management position at its Olivette Call Center. In September and November 2004, AT&T promoted Nanette Elkins, Nicole Neal, and Kendra Clay, all African-American females, to management positions at its Olivette Call Center. The promotions of these individuals were the only promotions from non-management to management positions at AT&T's Olivette Call Center in 2004. Plaintiff was not considered for a management position because she did not complete the management candidacy process. Specifically, she never met with Mr. Tweedie to discuss her developmental activity and hear his feedback. Id. at ¶¶ 16, 18, 29-31.

### B. Disciplinary Actions Against Plaintiff and Grievances

Starting in the fall of 2004, Mr. Tweedie began to notice that plaintiff was inputting improper codes into her telephone. On October 6, 2004, AT&T discovered plaintiff was not making or receiving calls for more than 50 minutes and had input a code for a restroom break in her phone for over 25 minutes. Mr. Tweedie advised plaintiff that she needed to take her breaks at their scheduled times. On October 20, 2004, plaintiff had entered the code for taking a manual sales order into her phone for more than 28 minutes. Mr. Tweedie could not find plaintiff, and was advised by her co-workers that she was on vacation. Upon further investigation, Mr. Tweedie discovered that plaintiff had logged out of her computer system at 3:45 p.m., but the manual sales code had been entered in

her phone since 4:00 p.m. Plaintiff was not scheduled for vacation until 5:00 p.m. On October 22, 2004, Mr. Tweedie met with plaintiff and advised her that AT&T's reports indicated she had stopped working before 4:00 p.m. and that she needed to take her breaks and lunch at their scheduled times. Id. at ¶¶ 19-26.

On December 17, 2004, Mr. Tweedie was advised that plaintiff had a code for a restroom break entered in her phone for more than 10 minutes. Mr. Tweedie found plaintiff in the break room. He placed plaintiff on six months of "positive discipline" for production, failure to adhere to her schedule, and excessive time off the dialer. Later that day, Mr. Tweedie noticed plaintiff was still logged into her phone after her shift was over, in violation of AT&T policy. He approached plaintiff and asked her to log out of the system. Plaintiff responded, "Do you own this building? . . . Then how can you tell me I have to leave?" Id. at ¶¶ 33-35.

On March 2, 2005, Suzanne Lay, the General Manager at the Olivette Call Center, and a representative of the Communications Workers of America ("CWA") held a grievance meeting regarding plaintiff's December 17, 2004 conduct. During the meeting, plaintiff became argumentative. After the meeting had recessed, plaintiff interrupted on three separate occasions a subsequent grievance meeting held by Ms. Lay unrelated to plaintiff. The CWA representative removed plaintiff from the meeting room after two of these interruptions. After the three interruptions, Ms. Lay noticed plaintiff sitting at her desk staring at the ceiling when she was not scheduled to be on the sales floor.

Shortly thereafter, plaintiff went to speak with Rhlonda James, Attendance Manager, regarding an absence notification form. During this discussion, Marsha Mathes, Area Manager-Teleservices, approached, and plaintiff stated she would not continue the meeting with Ms. Mathes

present.  Approximately five minutes later, plaintiff went to inquire again about the absence notification form and then stood and stared into Ms. Lay's office for several minutes.  Five minutes later, management observed plaintiff on the sales floor interrupting another employee who was on a sales call with a customer.  Based on these behaviors, AT&T and the CWA made a joint referral for plaintiff to undergo a fitness-for-duty examination.  Plaintiff was released from work with full pay and benefits.  Id. at ¶¶ 40-43.

**C.  Plaintiff's FMLA Requests**

Plaintiff requested and was granted FMLA leave on the following dates: November 8 through November 22, 2004; January 26, 2005; January 28, 2005; January 29 through January 31, 2005; February 22, 2005; February 28, 2005; March 28, 2005; April 4, 2005; and April 11, 2005.  Plaintiff was denied FMLA leave for a partial absence on February 8, 2005.  See Def. SOF Counts III and V, ¶¶ 60-69.

**D.  Events Leading to Plaintiff's Termination**

AT&T has a Code of Business Conduct ("COBC") governing the conduct of all employees.  Engaging in conduct that violates the COBC is grounds for disciplinary action, up to and including dismissal.  The COBC provides that fraudulent or illegal conduct violates the COBC, and includes oral or written misrepresentations of facts, improper reporting of time or expenses, or any other dishonest acts, done on or off the job.  See Def. SOF Counts I and II, ¶¶ 51-55.

One measure of a Senior Consultant's productivity is the employee's "talk time," i.e., the amount of time the employee talks with AT&T's customers.  In the spring of 2005, AT&T's management noticed from system reports that the talk times of several employees, including plaintiff, sharply increased.  Upon further research, management discovered that plaintiff had spent 29 minutes

on a call that she dispositioned as an "answering machine." She also spent 27 minutes on a call that she dispositioned as "customer hung up before presentation." AT&T's management determined that plaintiff improperly held onto calls that she dispositioned as "customer hung up before presentation," "answering machine," or "no decision maker" for 4.3 hours over the course of nine working days in March and April 2005. Id. at ¶¶ 58-67.

Ms. Lay held a meeting with plaintiff on April 12, 2005. During this meeting, Ms. Lay asked plaintiff to explain how she would disposition a call if she reached an answering machine or if the customer hung up on her before she completed her presentation. Plaintiff responded that she would disposition the call as "answering machine" or "customer hung up before presentation" and would end the calls immediately. Ms. Lay told plaintiff that she had calls that had lasted 7 minutes, 9 minutes, and 29 minutes that were categorized as "answering machine," and a call lasting 27 minutes that was categorized as "customer hung up before presentation." Ms. Lay advised plaintiff that she was being suspended without pay pending the completion of defendant's investigation. Id. at ¶¶ 68-75.

On April 18, 2005, Ms. Lay held a "Day in Court" meeting with plaintiff to allow plaintiff to present any evidence she wanted management to consider before making a final decision regarding her employment. Plaintiff did not present any evidence or explanation. Ms. Lay terminated plaintiff for misconduct, specifically misuse of company time in violation of AT&T's COBC, effective April 18, 2005. Id. at ¶¶ 76-78.

**IV. Discussion**

**A.    Counts I and II—Plaintiff's Title VII Discrimination Claim and 42 U.S.C. §1981 Racial Discrimination and Retaliation Claim**

Defendant moves for summary judgment on plaintiff's claims that AT&T discriminated against her in violation of Title VII based on race (Count I) and on her claims that AT&T discriminated and retaliated against her based on race in violation of § 1981 (Count II).   Defendant argues plaintiff cannot meet her burden to establish unlawful discrimination and that plaintiff's discriminatory failure-to-promote claim is time-barred because she failed to file suit regarding this allegation within 90 days of receiving her right-to-sue notice.   This failure to timely file argument does not affect plaintiff's §1981 claim, as the statutes are not co-extensive.   See Kim v. Nash Finch Co., 123 F.3d 1046, 1063 (8th Cir. 1997).   A race discrimination claim under 42 U.S.C. § 1981 is not subject to Title VII's 90-day limitation period.   Id.; see also Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 462 (1975).   Therefore, the Court need not address the timeliness issue.

The elements of a § 1981 disparate treatment claim and a Title VII disparate treatment claim are identical.   Kim v. Nash Finch Co., 123 F.3d at 1063.   To establish a prima facie case of disparate treatment based on race, a plaintiff must prove that: (1) she is a member of a protected class; (2) she was qualified to perform her duties; (3) she suffered an adverse employment action; and (4) circumstances give rise to an inference of discrimination, which may include that similarly situated employees, who are not members of the protected group, were treated differently.   See Green v. Franklin Nat'l Bank of Minneapolis, 459 F.3d 903, 913 (8th Cir. 2006); Rodgers v. U.S. Bank, N.A., 417 F.3d 845, 850 (8th Cir. 2005).

The McDonnell Douglas burden-shifting framework governs claims of race discrimination under Title VII and § 1981.   See Gordon v. Shafer Contracting Co., Inc., 469 F.3d 1191, 1196 (8th

Cir. 2006) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)).  Under the burden-shifting analysis, plaintiff must first establish a prima facie case of intentional discrimination. The burden then shifts to defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action.  If defendant articulates such a reason, plaintiff must then demonstrate that defendant's reason is a pretext for discrimination.  Id.  The applicable standard in the Eighth Circuit on summary judgment "require[s] only that plaintiff adduce enough admissible evidence to raise genuine doubt as to the legitimacy of the defendant's motive, even if that evidence [does] not directly contradict or disprove defendant's articulated reasons for its actions."  Davenport v. Riverview Gardens Sch. Dist., 30 F.3d 940, 945 n.8 (8th Cir. 1994); see also Strate v. Midwest Bankcentre, Inc., 398 F.3d 1011, 1021 (8th Cir. 2005).

1.    Failure to Promote

Plaintiff alleges that AT&T refused to promote her because of her race.[3]  To establish a prima facie case of discriminatory failure to promote under Title VII or § 1981, a plaintiff must demonstrate that: (1) she is a member of a protected group; (2) she was qualified and applied for a promotion to an available position; (3) she was rejected; and (4) a similarly qualified employee, not part of the protected group, was promoted instead.  See Allen v. Tobacco Superstore Inc., 475 F.3d 931, 937 (8th Cir. 2003).  Defendant argues that plaintiff's claim fails as a matter of law because plaintiff was not qualified and did not apply for any management position.  Additionally, defendant contends

_____

[3]Plaintiff's complaint alleges only racial discrimination.  See Compl., ¶¶ 19-24.  In response to summary judgment, however, plaintiff also appears to argue she was not promoted because of her sex.  The Court's conclusions are the same regardless of whether plaintiff's protected group is considered African-Americans or African-American females.

plaintiff failed to establish that any similarly qualified employee not part of the protected group was promoted instead.

The undisputed facts establish that plaintiff did not apply for any management position. In response to summary judgment, plaintiff submits only two sentences regarding her application and qualification for a management position: "Plaintiff sought a position in Management (Plt Aff P. #5) The company maintained a resume for Plaintiff which clearly indicates adequate qualifications (EXHIBIT #3)." See Pl. Resp. at 5 (citations in original). Although plaintiff cites to her affidavit to support her contention that she applied for a position in management, nothing in either of plaintiff's affidavits specifically states that she applied for a management position.[4] The only reference plaintiff makes in her affidavit to any application for promotion is a statement made in the context of her EEOC complaint: "I filed (2) complaints with the EEOC alleging discrimination and retaliation, being passed over for an applied for management position which was ultimately given to another (white) worker." See Pl. Aff. II, ¶ 5. The EEOC complaint is not evidence that she applied for a promotion. As for her qualifications, plaintiff attaches to her memorandum an unauthenticated and undated copy of her resume that she asserts was on file at AT&T. The only professional experience listed on the resume is a position as a teacher with the St. Louis Board of Education. Plaintiff has submitted no evidence that she applied for a management position or that she was qualified for a management position.

The undisputed evidence demonstrates that plaintiff did not complete AT&T's requisite management candidacy process. See Def. SOF Counts I and II, ¶¶ 6-28. The Court notes that failure

---

[4]     Plaintiff filed two affidavits in support of her opposition to defendant's summary judgment motions, one dated April 17, 2007 ("Pl. Aff. I") and another dated April 27, 2007 ("Pl. Aff. II").

to formally apply to a management position does not bar a plaintiff from establishing a prima facie case, as long as the plaintiff "made every reasonable attempt to convey [her] interest in the job to the employer." Allen, 475 F.3d at 937. Here, however, not only did plaintiff fail to complete the requisite management candidacy process, she affirmatively conveyed her disinterest in completing the required steps, which are a prerequisite to a managerial position. In an e-mail message to her supervisor, Mr. Tweedie, regarding feedback on her developmental activity (a document required to be submitted along with a resume), plaintiff stated, "I don't think you should give me any information on how to improve my activity. It's my work, I just wanted to turn it in. Sorry about that. Thank you." See Tweedie Aff. ¶ 15.

Finally, the evidence demonstrates that AT&T promoted four individuals from non-management to management positions at its Olivette Call Center in 2004—one Caucasian male and three African-American females. Three of the four individuals promoted in 2004 were in the same protected group as plaintiff. Even assuming plaintiff could establish all the other requirements of a prima facie case of discriminatory failure to promote, she has not demonstrated that a similarly qualified employee not of the protected group was promoted instead of her.

## 2.     Retaliation Claims

In addition to alleging a discriminatory failure to promote, plaintiff claims that AT&T retaliated against her for engaging in protected activity, i.e., filing EEOC complaints. To establish a prima facie case of retaliation under Title VII or § 1981, plaintiff must show: (1) she engaged in protected conduct; (2) a reasonable employee would have found her employer's retaliatory action materially adverse; and (3) the materially adverse action was causally linked to her protected conduct. See Burlington N. & Santa Fe Ry. Co. v. White, -- U.S. --, 126 S.Ct. 2405 (2006); Devin v.

Schwan's Home Serv., Inc., --- F.3d ----, 2007 WL 1948310 (8th Cir. July 6, 2007). The second prong is "objective, requiring us to consider whether a reasonable employee in the plaintiff's position might have been dissuaded from making a discrimination claim because of the employer's retaliatory actions." Devin, 2007 WL 1948310 at *4 (citing Burlington Northern, 126 S.Ct. at 2412-13).

Plaintiff engaged in protected conduct when she filed charges of discrimination with the EEOC on December 9 and December 29, 2004; and March 4, April 8, and May 2, 2005. She alleges the following retaliatory actions by defendant: (a) defendant placed her on a "six-month step of discipline"; (b) defendant asked her to leave the call center before logging out of her computer; (c) defendant issued her a "write up" for failure to follow procedure when leaving the call center; (d) defendant released her from work for a fitness-for-duty examination; (e) defendant did not return her identification badge; (f) defendant did not hear her grievance filed with the union; and (g) defendant suspended and subsequently terminated her.

As an initial matter, plaintiff has briefed for the Court only one retaliatory action of defendant—being referred for the fitness-for-duty exam. Her complaint, however, incorporates each of her EEOC charges of discrimination, and alleges defendant engaged in retaliation in violation of Title VII and § 1981. See Compl. § 16(a). While the record concerning the six alleged retaliatory actions that have not been briefed is sparse, the Court will address each action in turn, noting the deficiencies in the record.

(a)     Six-Month Step of Discipline

The only factual support provided by plaintiff regarding her "six-month step of discipline" is from her EEOC charge of discrimination, in which she states:

On 12/17/04 I was informed that I was being placed on a six (6) months discipline. The stated reason was for being in the restroom for twelve (12) minutes. There is no

14

policy about the length of time to go to the restroom. To my knowledge no one else has been disciplined for being away from his or her desk in the restroom for any amount of time.

Pl.'s EEOC Charge of Discrimination, filed Dec. 29, 2004.

The uncontradicted facts establish that Mr. Tweedie placed plaintiff on six months of "positive discipline" for failure to adhere to her schedule and excessive time off the dialer. Mr. Tweedie states that positive discipline "does not impact an employee's title, salary, or benefits." <u>See</u> Def. SOF Counts I and II, ¶¶ 19-26, 33-34. The Eighth Circuit has noted that under <u>Burlington Northern</u> it is plaintiff's burden to show the alleged retaliatory action was material and "produced significant harm." <u>See</u> <u>Devin</u>, 2007 WL 1948310 at *5. Based on the record, the Court finds that any harm from this event was trivial and is insufficient to meet the <u>Burlington Northern</u> standard. Plaintiff has failed to submit any evidence that her six-month positive discipline would dissuade a reasonable employee from engaging in protected activity.

> (b)  *Defendant Asked Plaintiff to Leave the Call Center Before Logging Out of Her Computer*

Plaintiff has provided scant factual support for her claim that defendant's action in asking her to leave the call center before logging out of her computer constitutes retaliatory conduct. The only support for her assertion is found in her EEOC charge filed December 29, 2004. Plaintiff states, "I was told to leave the building before I could be logged out of my computer the day I was disciplined, I believe due to retaliation for filing an internal complaint of discrimination."

Plaintiff's supervisor, Mr. Tweedie, described the action in his affidavit as follows:

Later that day, December 17, 2004, as I was leaving for the evening, I noticed that plaintiff was still logged into her phone. . . . When I arrived at plaintiff's desk, I said: "Is everything alright?" Plaintiff said: "Everything is fine." I said: "Okay, well I need you to log out of your phone and computer because it's time to go home for the evening." Plaintiff turned around and said: "Why are you talking to me?" I replied:

> "Cherry, your shift is over and as your supervisor, I'm asking you to log out of your systems and phone for the evening." Plaintiff replied: "Do you own this building?" I stated: "No, I don't." Plaintiff replied: "Then how can you tell me I have to leave?" I stated: "Cherry, your shift is over and that's company property. My supervisor instructed me to tell you that it's time to go home." Plaintiff replied: "Fine."

Def. Mem., Ex. D, ¶17.

Plaintiff has not alleged that she suffered any adverse consequences because of these actions. Because plaintiff does not suggest the alleged retaliatory action caused any harm, the Court cannot conclude that the action would have deterred a reasonable employee from engaging in protected activity.

> (c)    *Plaintiff Was Written Up for Failure to Follow Procedure When Leaving the Call Center*

Again, plaintiff has not briefed for the Court how defendant's action in "writing her up" for failure to follow procedure constitutes an adverse employment action. In her EEOC complaint filed March 4, 2005, she states: "On 1/27/05 I was written up for failure to follow procedure. I became ill at work and an ambulance was called and I was taken to the hospital. . . . I believe that I was written up in retaliation for filing prior complaints against Respondent."

In support of its motion for summary judgment, defendant filed the affidavit of Marsha Mathes, an Area Manager-Teleservices at AT&T's Olivette Call Center. Ms. Mathes states plaintiff was not written up or in any way disciplined for failing to follow the absence notification process on January 26. See Def. Mem., Ex. E, ¶¶ 7-10. Not only has plaintiff failed to produce any evidence that she was written up, but she has failed to suggest that this alleged write-up constituted materially adverse action. Assuming, *arguendo*, that the alleged write-up occurred, the Court finds that this action does not constitute an adverse employment action.

Plaintiff also claims that her referral to a fitness-for-duty examination constitutes a materially adverse retaliatory action. Based on undisputed facts, on March 2, 2005 during a grievance meeting held by General Manager Suzanne Lay regarding plaintiff's December 17, 2004 conduct, plaintiff was argumentative. After plaintiff's meeting concluded, Ms. Lay held grievance meetings on another matter unrelated to plaintiff. Plaintiff interrupted this meeting three separate times, and was removed twice from the meeting by a union representative. After being removed for the second time, plaintiff refused to meet with the attendance manager in the presence of her senior manager, stared at the ceiling while sitting on the sales floor before her scheduled shift (in violation of AT&T's policy), stared into the office of her supervisor for several minutes, and interrupted another employee who was on a sales call with a customer. Based on these behaviors, Ms. Lay and the CWA made a joint referral for plaintiff to undergo a fitness-for-duty examination. Plaintiff was released from work with full pay and benefits from March 2 to March 23, 2005.

The Eighth Circuit has questioned whether requiring a fitness-for-duty examination ever could be considered an adverse employment action, and has twice determined that it is not. See Schoffstall v. Henderson, 223 F.3d 818, 825 (8th Cir. 2000) (finding fitness-for-duty examination did not constitute an adverse employment action); Vislisel v. Turnage, 930 F.2d 9 (8th Cir. 1991) (affirming district court's finding that employer requiring employee to submit to physical and, if necessary, psychiatric examination was not an adverse employment action). These cases, however, were decided prior to the new standard announced in Burlington Northern. To find an adverse employment action under the analysis of Burlington Northern, the Court must find that the employment action complained of would cause a reasonable employee in plaintiff's position to be dissuaded from making

a discrimination claim. As noted recently in Devin v. Schwan's Home Serv., Inc., to meet the Burlington Northern standard, the Eighth Circuit requires the plaintiff to show that the adverse employment activity "produced significant harm" or a "materially significant disadvantage." Devin, 2007 WL 1948310 at *5.

Plaintiff has submitted no evidence that she suffered any harm as a result of being required to submit to a fitness-for-duty examination, let alone significant harm. It is undisputed that she received full pay and benefits during her absence, and was reinstated following the examination. The Court finds that plaintiff has not met her burden of showing a materially adverse retaliatory action based on the fitness for duty examination.

Moreover, the Court does not find a causal connection between this alleged adverse employment action and plaintiff's protected conduct. Plaintiff filed charges with the EEOC on December 9 and December 29, 2004. She was not referred to the fitness-for-duty examination until March 2, 2005. The Eighth Circuit cases that accept mere temporal proximity between a protected activity and an adverse employment action as sufficient evidence of causation to establish a prima facie case hold that the temporal proximity must be very close. See, e.g., Wallace v. Sparks Health Sys., 415 F.3d 853, 859 (8th Cir. 2005) (citing Clark County Sch. Dist. v. Breeden, 523 U.S. 268, 273 (2001) (citing cases in which a three-month and four-month period were insufficient to establish causation)); Kipp v. Missouri Highway & Transp. Comm'n, 280 F.3d 893, 896-97 (8th Cir. 2000) (finding two months from complaint and termination dilutes inference of causation). More than two months passed between plaintiff's protected activity and the adverse employment action. Plaintiff has presented no other evidence to establish the causation element, and because the temporal proximity between the activities is not "very close," the Court cannot rely on temporal proximity alone. For

18

these reasons, plaintiff cannot establish a prima facie case of retaliatory discrimination based on her referral to a fitness-for-duty examination.

<em>(e)      Defendant Did Not Return Plaintiff's Identification Badge</em>

On March 23, 2005, plaintiff returned to work from her fitness-for-duty examination, but she claims AT&T did not return her identification badge. It is undisputed that plaintiff never contacted any AT&T manager to complain or even inquire about why her badge had not been returned, and when it was brought to management's attention, AT&T returned the badge and explained that it was an oversight. The Supreme Court recognized in <u>Burlington Northern</u>, that the anti-retaliation provisions of Title VII do not protect an individual from all retaliation, but from "retaliation that produces an injury or harm." <u>Burlington Northern</u>, 126 S. Ct. at 2414. "We speak of *material* adversity because we believe it is important to separate significant from trivial harms." <u>Id.</u> at 2415 (emphasis in original). Construing the evidence in the manner most favorable to plaintiff, the Court finds that defendant's failure to return plaintiff's identification badge was, at most, a "petty slight" or "minor annoyance." <u>Id.</u> As such, it is not actionable.

<em>(f)      Defendant Did Not Hear Plaintiff's Grievance Filed with the Union<br>Related to the Fitness-For-Duty Examination</em>

Plaintiff has submitted no evidence upon which to base her claim that defendant refused to hear her grievance in retaliation for filing complaints of discrimination. Based on the undisputed facts, in a letter dated March 11, 2005, the CWA notified AT&T that it would initiate a grievance on plaintiff's behalf regarding "management's decision on March 2, 2005 to treat plaintiff in a harassing manner." In a letter dated March 21, 2005, defendant acknowledged the CWA's request and directed the CWA to contact Ms. Lay to schedule a meeting. On May 18, 2005, plaintiff's grievance was heard and denied by Ms. Lay. The CWA did not appeal this decision. <u>See</u> Def. SOF Counts I and

19

II, ¶¶ 44-45, 49-50.  But, even assuming plaintiff's allegation was supported by the record, she has not submitted evidence that the action produced significant harm.  <u>See</u> <u>Devin</u>, 2007 WL 1948310 at *5.  Plaintiff cannot establish a prima facie case of retaliation based on her allegation that AT&T refused to hear her grievance.

*(g)*     *Plaintiff Was Suspended and Subsequently Terminated*

Defendant does not dispute that plaintiff's suspension and subsequent termination constitutes an adverse employment action.[5]  Rather, defendant states that this claim fails as a matter of law because plaintiff cannot establish the requisite causal connection between the protected activity and the adverse action.  Additionally, defendant states that even if such a causal connection could be established, the undisputed evidence shows that defendant terminated plaintiff for a legitimate nondiscriminatory reason, <u>i.e.</u>, misuse of company time.

Based on the complaint and the EEOC charges filed against defendant, the Court finds that a sufficient temporal connection may exist between plaintiff's EEOC charges and her suspension and subsequent discharge.  Plaintiff filed charges with the EEOC on December 9 and December 29, 2004; and March 4, and April 8, 2005.  She was suspended on April 12, 2005 and terminated on April 18, 2005.  Contrary to defendant's assertion, there is a close temporal connection between plaintiff's protected activity and the adverse employment actions, and therefore plaintiff can likely establish a causal connection.

Assuming plaintiff has established her prima facie case, the burden shifts to defendant to produce a nondiscriminatory reason for the adverse employment action.  Defendant has produced

---

[5]Plaintiff did not brief the Court regarding her allegations that her suspension and subsequent termination were retaliatory.

substantial, competent, and undisputed evidence of its nondiscriminatory reason for plaintiff's discharge. Specifically, over the course of nine work days in March and April 2005, plaintiff held onto calls in which the customer had hung up, where the customer was not available, or where she reached an answering machine. These calls totaled 4.3 hours of work time.

Because AT&T has produced evidence of a legitimate, nondiscriminatory reason for its termination of plaintiff, i.e., misuse of company time, plaintiff must point to some evidence that AT&T's proffered reason is pretextual. An employee can prove pretext by showing the employer's explanation has no basis in fact. As noted above, plaintiff has not specifically controverted the facts as alleged by AT&T. See Part III, supra. In her affidavit, however, she states summarily that she has "always input the proper codes in [her] duty station." Pl. Aff. I, ¶¶ 13-14. This general denial does not create an issue of material fact as to the specific events that led to her termination. Plaintiff's mere denial of the facts surrounding her discharge, standing alone, is not evidence to establish that defendant's stated reason for the discharge was a pretext for illegal discrimination. See Stuart v. General Motors Corp., 217 F.3d 621, 636 (8th Cir. 2000). The relevant inquiry is whether defendant believed plaintiff was guilty of conduct that justified her discharge in April 2005. See Scroggins v. University of Minn., 221 F.3d 1042, 1045 (8th Cir. 2000). Plaintiff has not provided any facts that call into question AT&T's belief that plaintiff was misusing company time.

Also, an employee can prove pretext by showing that the employer varied from its normal policy or practice to address the employee's situation. See Erickson v. Farmland Indus., Inc., 271 F.3d 718, 727 (8th Cir. 2001). For example, the employee can show that the employer routinely treated similarly situated employees not in the protected class more leniently. See Smith v. Allen Health Sys., Inc., 302 F.3d 827, 835 (8th Cir. 2002). Plaintiff has not shown AT&T varied from its

normal policy and practice to address her situation. By affidavit, she attempts to show that AT&T treated similarly situated employees who were not in the protected class differently. See Pl. Aff. I, ¶¶ 15-16, 18, 19-20. As AT&T observes, however, plaintiff's affidavit contains statements made without personal knowledge, hearsay, and legal conclusions.[6] Id. Even if the statements in the affidavit were deemed admissible, plaintiff does not allege that any white employee violated the COBC. Nor does she submit enough evidence to establish that these employees were similarly situated to her. In fact, AT&T has shown with admissible evidence that none of the employees plaintiff alleges engaged in misconduct was similarly situated to her. See Affidavit of Shawn Adams, ¶ 5; Affidavit of Marsha Mathes, ¶ 5. Plaintiff has not met her burden of establishing with admissible evidence that AT&T routinely treated similarly situated employees who were not in the protected class more leniently. See Riser v. Target Corp., 458 F.3d 817, 821-822 (8th Cir. 2006). Plaintiff has failed to present any evidence that tends to establish that AT&T's articulated legitimate, nondiscriminatory reason for her discharge in April 2005 was a pretext for illegal discrimination.

For these reasons, defendant's motion for summary judgment on plaintiff's § 1981 claim in Count II should be granted. Because the analysis of plaintiff's Title VII claim is the same as the §1981 analysis, see Kim v. Nash Finch Co., 123 F.3d at 1063, defendant's motion for summary

---

[6]In deciding a motion for summary judgment, the Court may consider only admissible evidence, and must disregard portions of declarations that were made without personal knowledge, consist of hearsay, or purport to state legal conclusions as fact. See Shaver v. Independent Stave Co., 350 F.3d 716, 723 (8th Cir. 2003).

In addition, none of the exhibits attached to the affidavit is authenticated. Exhibits to a summary judgment motion or response must be properly authenticated or verified by affidavit. See Country Club Estates, L.L.C. v. Town of Loma Linda, 213 F.3d 1001, 1006 (8th Cir. 2000) (unverified and unauthenticated letter was a "legal nullity").

judgment on Count I should also be granted, and the Court will not address defendant's arguments concerning procedural deficiencies relating to plaintiff's Title VII claim.

**B.      Count III—FMLA Interference and Retaliation**

Two types of claims exist under the FMLA: (1) interference claims in which the plaintiff alleges that her employer denied or interfered with her substantive rights under the FMLA, and (2) retaliation claims, in which the employee alleges her employer discriminated against her for exercising her FMLA rights.  See Stallings v. Hussmann Corp., 447 F.3d 1041, 1050 (8th Cir. 2006). Unfortunately, plaintiff does not make this distinction, and it is difficult to ascertain her precise theory of recovery from the complaint.  Based on her response to defendant's summary judgment motion, however, it appears that she is claiming both that AT&T interfered with her entitlement to FMLA benefits and that it retaliated against her in violation of the protections of the FMLA.  The Court, therefore, will address both theories.

1.      FMLA Interference

Pursuant to the FMLA, an employer is prohibited from interfering with, restraining, or denying an employee's exercise or attempted exercise of any right contained in the FMLA.  See 29 U.S.C. § 2615(a)(1).  Interference includes refusing to authorize leave, and discouraging an employee from using such leave.  In an interference claim, an "employee must show only that he or she was entitled to the benefit denied." Stallings, 447 F.3d at 1050 (quoting Russell v. North Broward Hosp., 346 F.3d 1335, 1340 (11th Cir. 2003)).  The Eighth Circuit has recognized that an employee can prove interference with a FMLA right regardless of the employer's intent.  Id.  Unlike a FMLA retaliation claim, the Eighth Circuit does not apply the burden-shifting scheme of McDonnell Douglas, 411 U.S. at 802, when analyzing a FMLA interference claim.  See Stallings, 447 F.3d at 1051 n.3.

Although it is difficult to piece together plaintiff's FMLA interference claim, it appears that plaintiff alleges AT&T interfered with her right to take FMLA leave by denying her FMLA leave on February 8, 2005. On this date, she left work early for an appointment with her psychiatrist, Dr. Parimal Patel. Plaintiff states that "[i]n spite of plaintiff's notice and supporting documentation" from Dr. Patel, she received an "attendance occurrence" as a result of this absence. <u>See</u> Def. Resp. 4.[7]

Defendant states that plaintiff's request for leave under the FMLA for her absence on February 8, 2005 was denied because she did not request the absence be considered under FMLA within two business days after returning to work. Pursuant to 29 C.F.R. § 825.208(e)(1), if an employee seeks that leave be counted as FMLA leave after she has already returned to work, she must make this request within two days. The regulation provides:

> If leave is taken for an FMLA reason but the employer was not aware of the reason, and the employee desires that the leave be counted as FMLA leave, the employee must notify the employer within two business days of returning to work of the reason for the leave. In the absence of such timely notification by the employee, the employee may not subsequently assert FMLA protections for the absence.

29 C.F.R. § 825.208(e)(1).

Joseph Atilano, the Associate Director of AT&T's FMLA Processing Unit, submitted an affidavit in support of defendant's motion for summary judgment. Mr. Atilano states that plaintiff's request for leave under FMLA regarding her absence on February 8, 2005 was denied because she did not timely file the request. <u>See</u> Def. Mem., Ex. C at ¶ 12. Attached to Mr. Atilano's affidavit is a properly authenticated copy of AT&T's FMLA file for plaintiff. Based on the "FMLA Comments Report," plaintiff did not seek leave under the FMLA for her February 8, 2005 absence until February

---

[7]Plaintiff did not file a separate Statement of Material Facts. Plaintiff's argument in support of her FMLA interference claim is found only in her response to defendant's summary judgment motion on Counts III and V (mistakenly labeled by plaintiff as Counts III and IV).

17, 2005. This request fell outside the applicable two-day period in which the request should have been received. Id. at ¶¶ 13-17.

AT&T also filed an affidavit of Annamaria M. Cardenas, a HROnestop Customer Care Specialist at its FMLA Processing Unit. Ms. Cardenas was the employee that spoke with plaintiff on February 17, 2005 regarding her request for leave for her absence on February 8, 2005. As noted in the "FMLA Comments Report," in her conversation with plaintiff she advised plaintiff that her FMLA request was denied because it was untimely. "The employee (Cherry Cotton) states that she knows but due to her disability she needed this to be overturned because her health care provider did support her absence . . . . I advised the employee (Cherry Cotton) per the F1 (request for leave under the FMLA) she requested FMLA on February 17, 2005." See Def. Reply, Ex. A at ¶ 8.

In her opposition to summary judgment, plaintiff disputes this fact. She contends that she supplied adequate notice that she would need FMLA leave and submitted supporting documentation from Dr. Patel. Plaintiff's sole evidentiary support for this claim is three sentences in her affidavit. Plaintiff states:

> On February 8, 2005, I placed AT&T on notice, by way of James Tweedie and Marsha Mathes of the need to take FMLA. I left work early and reported to my Physician/Psychiatrist Dr. Patel. Dr. Patel did recommend additional FMLA Leave and utilizing Intermittent FMLA to deal with the work environment stress. I was issued an "attendance Occurrence" (discipline) for my absence on February 8, 2005.

Pl. Aff. I, ¶¶ 9-10.

The Court finds that there is a material factual dispute regarding when plaintiff gave AT&T notice of her need to take FMLA leave for her partial absence on February 8. Regardless of the disputed fact, however, plaintiff has submitted no evidence that she sustained any damages arising out of AT&T's failure to count her partial absence on February 8 as FMLA leave. In an action

brought under the FMLA, "'a plaintiff must be able to show a reasonable likelihood that a rational trier of fact would award . . . damages or find [an entitlement] to injunctive relief to avoid the entry of summary judgment.'" McBurney v. Stew Hansen's Dodge City, Inc., 398 F.3d 998, 1002 (8th Cir. 2005) (affirming district court's grant of summary judgment where plaintiff showed no evidence of damages for FMLA interference) (quoting Dawson v. Leewood Nursing Home, Inc., 14 F. Supp. 2d 828, 832 (E.D. Va. 1998)).

It is undisputed that plaintiff returned to work on February 9, and AT&T granted her FMLA leave requests on February 22, February 28, March 28, April 4, and April 11. See Affidavit of Joseph Atilano ¶¶ 12-17. Additionally, plaintiff did not suffer any decrease in her pay and benefits as a result of her partial absence on February 8. Plaintiff was neither disciplined nor demoted. See McBurney, 398 F.3d at 1002. Plaintiff has not alleged that she was damaged in any way by AT&T's alleged improper refusal to grant her FMLA leave for her partial absence from work on February 8, 2005. She cannot show that a rational trier of fact would award damages or find an entitlement to injunctive relief. See McBurney, 398 F.3d at 1002. Accordingly, the Court grants defendant's motion for summary judgment on plaintiff's claim of FMLA interference.

2.      FMLA Retaliation

It appears plaintiff is also bringing a claim for FMLA retaliation. The FMLA prohibits employers from discriminating against employees for asserting rights under the Act. Stallings, 447 F.3d at 1051. An employer cannot consider an employee's use of FMLA leave as a negative factor in an employment action. Basing an adverse employment action on an employee's use of FMLA leave is actionable. Id.

To establish a prima facie case of retaliation under the FMLA, plaintiff must demonstrate that (1) she engaged in statutorily protected conduct; (2) she suffered an adverse employment action; and (3) there is a causal connection between the protected conduct and the adverse employment action. Once plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate nondiscriminatory reason for its actions. If the employer can articulate such a reason, the burden shifts back to the employee to demonstrate that the employer's proffered reason is pretextual. See Smith v. Allen Health Sys., Inc., 302 F.3d 827, 832 (8th Cir. 2002) (citing McDonnell Douglas, 411 U.S. at 802-03).

Again, it is difficult to piece together plaintiff's claim of FMLA retaliation. Based on her response to summary judgment, plaintiff appears to contend that she was retaliated against for taking FMLA leave from January 26 to January 31, 2005 and for taking FMLA leave on April 11, 2005. Plaintiff seems to allege three separate adverse employment actions in retaliation for this protected activity: (1) she was "verbally advised" and disciplined for leaving work on January 26, 2005; (2) her supervisor "input the wrong production code" in her work station phone; and (3) she was suspended on April 12, 2005 when she returned from approved FMLA leave and terminated on April 18, 2005.

Apparently AT&T had an equally difficult time deciphering plaintiff's claim of FMLA retaliation. In its reply, AT&T states that "[p]laintiff only takes issue with the denial related to her February 8, 2005 absence." AT&T argues that because plaintiff was not entitled to FMLA leave on February 8, 2005, she cannot make a prima facie case for retaliation. AT&T does not address any of the three adverse actions alleged by plaintiff.

Contrary to AT&T's assertions, plaintiff has demonstrated that she engaged in statutorily protected activity, i.e., FMLA leave from January 26 through January 31, 2005 and intermittent

FMLA leave, including leave on April 11, 2005. She also alleges three purported adverse employment actions. Although the Eighth Circuit has not yet determined whether the standard enunciated recently in <u>Burlington Northern</u> for adverse employment actions in Title VII retaliation cases applies to a claim of FMLA retaliation, several courts that have addressed this issue have applied <u>Burlington Northern</u> to claims of FMLA retaliation. <u>See</u> <u>Burnett v. LFW Inc.</u>, 472 F.3d 471, 481 & n.5 (7th Cir. 2006); <u>Metzler v. Federal Home Loan Bank</u>, 464 F.3d 1164, 1171 & n.2 (10th Cir. 2006); <u>Gibson v. Lafayette Manor, Inc.</u>, 2007 WL 951473 at *19 (W.D. Pa. Mar. 27, 2007). Moreover, the Eighth Circuit has consistently cited to the standard for determining adverse employment actions in retaliation cases brought under Title VII and § 1983 when evaluating a retaliation claim brought under the FMLA. <u>See, e.g.</u>, <u>Harris v. Emergency Providers, Inc.</u>, 51 Fed. App'x 600, 601 (8th Cir. 2002) (citing <u>Jones v. Fitzgerald</u>, 285 F.3d 705, 714 (8th Cir. 2002)); <u>Darby v. Bratch</u>, 287 F.3d 673 (8th Cir. 2002). Therefore, the Court will apply the <u>Burlington Northern</u> standard for adverse employment action to plaintiff's claim of retaliation brought pursuant to the FMLA. <u>See</u> <u>Burlington Northern</u>, 126 S.Ct. at 2415.

> (a) *"Verbally Advised," Disciplined, and Wrong Production Code Entered in Workstation*

Plaintiff alleges that she took approved FMLA leave from January 26 to January 31, 2005, and that upon her return to work, she was called to a meeting with Marsha Mathes and was "verbally advised about her leaving in ambulance 1/26/05 from work and one of Plaintiff's supervisors input the wrong production code in Plaintiff's workstation phone." <u>See</u> Pl. Resp., 2. Plaintiff also states that she was "discipline[d] for leaving the work cite [sic] in ambulance." <u>Id.</u> at 3.

Pursuant to the standard enunciated by the Supreme Court in <u>Burlington Northern</u>, for an employment action to be deemed adverse in a retaliation case, a plaintiff must show that a reasonable

employee would have found the challenged action materially adverse. 126 S.Ct. at 2415. This standard requires the Court to consider whether a reasonable employee in the plaintiff's position might have been dissuaded from engaging in protected activity because of the employer's retaliatory actions. Id. The Eighth Circuit has interpreted this standard as requiring the plaintiff to show the action was "material, producing significant rather than trivial harm." Devin, 2007 WL 1948310 at *5.

Plaintiff has submitted no evidence that AT&T's verbal advisory or discipline produced any harm to her, much less significant harm. Nor has plaintiff submitted any evidence that her supervisor's action of inputting the wrong production code in her workstation phone produced any harm. The Court cannot find any evidence in the record that any of these actions would have been materially adverse to a reasonable employee. Thus, it finds that plaintiff has not met her burden of showing that the alleged actions taken by AT&T on February 1 and February 2, 2005 were adverse employment actions.

*(b)     Plaintiff's Suspension and Subsequent Termination*

The record shows that plaintiff took approved FMLA leave on April 11, 2005. On April 12, 2005 she was suspended; on April 18, 2005, she was terminated. Suspension and subsequent termination are adverse employment actions. Additionally, the Court finds that the time interval between the protected activity and the adverse employment action is "very close" and sufficient to show a causal connection between the two. See, e.g., Smith v. Allen Health Sys., Inc., 302 F.3d 827, 832 (8th Cir. 2002) (finding two-week interval between taking FMLA leave and discharge sufficient to prove causal connection between exercise of rights and adverse employment action). Although plaintiff's arguments are far from clear, it does appear that she has established that she exercised a

right afforded by the FMLA, she suffered an adverse employment action, and a causal connection between the exercise of the right and the adverse action, i.e., she has established a prima facie case of FMLA retaliation.

As discussed in the preceding section, however, AT&T has articulated a legitimate nondiscriminatory reason for plaintiff's suspension and termination. Specifically, plaintiff improperly held onto calls that she dispositioned as "customer hung up before presentation," "answering machine," or "no decision maker" for 4.3 hours over the course of nine working days in March and April 2005. Plaintiff bears the burden of establishing that this reason is pretextual, which she has not done. Plaintiff has not produced any evidence that creates a question of fact regarding whether AT&T's stated reason is pretextual. She also has not produced any evidence to create a reasonable inference that defendant acted in retaliation. She has submitted only her own affidavit containing statements made without personal knowledge. See Part IV.A.2(g), supra. The statements in the affidavit attempt to establish pretext by showing that AT&T varied from its normal policy and practice to address plaintiff's situation. See id., Pl. Aff. I, ¶¶ 15-19. Even if the statements in the affidavit were admissible, however, they would show only that white employees were treated differently than black employees. While, at most, this might be evidence of racial discrimination, this is not evidence that AT&T retaliated against her for exercising her rights under the FMLA. Plaintiff has submitted absolutely no evidence, admissible or otherwise, to suggest that defendant's asserted reasons for suspending and terminating her were pretext for FMLA retaliation. The Court finds that no evidence exists to support a finding of pretext for AT&T's proffered justification for suspending and terminating plaintiff.

### C.	Plaintiff's Claim for Breach of Contract (Count V)

In Count V, plaintiff claims that AT&T breached its contract and owes her money for earned, but unused, vacation pay.  Plaintiff's argument in support of her breach of contract claim is barely discernable.  Based on her complaint, she is suing on AT&T's "promise to pay vacation pay to her."  Compl. at ¶¶ 49, 52.  She does not specify a contract.  In response to summary judgment, plaintiff states she "never signed any contract wherein she voluntarily waived any earned income/wages."  Pl. Resp. to Def. SOF Counts III and V, ¶ 56.  This statement is inapposite to defendant's arguments.

During 2005, the collective bargaining agreement ("CBA") between AT&T and the CWA (the "2004 Labor Agreements") recognized the CWA as the sole collective bargaining agent for AT&T employees with the job title of Senior Consultant, including plaintiff.  See Def. SOF II ¶¶ 47-48.  Defendant contends that plaintiff did not exhaust her administrative remedies under the CBA before filing suit.  Additionally, defendant states that because plaintiff was dismissed for misconduct, she is not entitled to vacation pay pursuant to contract.

Plaintiff does not controvert that the 2004 Labor Agreements apply to her.  See Def. SOF II ¶ 55.  Section 1 of Article IX of the 2004 Labor Agreements expressly excludes vacation pay to employees dismissed for misconduct.  It provides:

> **Vacation Eligibility**.  Subject to the provisions of Sections 3., 4., and 9. hereof, vacations with pay shall be granted during the vacation year to each employee, except upon dismissal for misconduct, who shall have completed a period of six (6)-months' employment since date of engagement or reengagement, whichever is later, and who has performed work for the Company within the vacation year, as follows: . . . .

> . . .

> **Separations Prior to Vacation Through Dismissal, Layoff, Resignation, Retirement, or Death.**  If, before, receiving the vacation to which he or she has become entitled, an employee is dismissed (except for the reason of misconduct), laid

off, resigned, or retired, such employee shall be entitled to an allowance in cash equal
to and in lieu of such vacation.

Def. Mem., Ex. D, ¶ 7.

Pursuant to the 2004 Labor Agreements, because plaintiff was dismissed for misconduct, she was not entitled by contract to any earned, but unused vacation pay.  See Def. Mem., Ex. B, ¶ 15; Ex. D, ¶¶ 13-14.  Additionally, plaintiff has produced no evidence that she exhausted (or even attempted to exhaust) the contract grievance procedure required to sustain her breach of contract claim.  Therefore, AT&T is entitled to summary judgment on Count V.

## V.  Conclusion

For the foregoing reasons, the Court concludes that plaintiff has failed to establish racial discrimination in violation of either Title VII or 42 U.S.C. § 1981, and that defendant's motion for summary judgment should therefore be granted as to all claims in Counts I and II.  The Court further concludes that plaintiff has not established FMLA interference or retaliation, and defendant's motion for summary judgment should be granted as to all claims in Count III.  Finally, defendant is entitled to summary judgment on plaintiff's claim for breach of contract in Count V.

Accordingly,

**IT IS HEREBY ORDERED** that defendant AT&T Operations, Inc.'s Motion for Summary Judgment on Counts III and V is **GRANTED**.  [Doc. 77]

**IT IS FURTHER ORDERED** that defendant AT&T Operations, Inc.'s Motion for Summary

Judgment on Counts I and II is **GRANTED**. [Doc. 86]

An appropriate judgment will accompany this memorandum and order.


_____

**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**


Dated this <u>2nd</u> day of August, 2007.